1
2
3
4
5
6   O
7
8               UNITED STATES DISTRICT COURT
9               CENTRAL DISTRICT OF CALIFORNIA
10
11  CARLOS PITTS,                    )   Case No. EDCV 11-230-OP
                                     )
12                 Plaintiff,        )
                                     )   MEMORANDUM OPINION AND
13         v.                        )   ORDER
                                     )
14  MICHAEL J. ASTRUE,               )
    Commissioner of Social          )
15  Security,                        )
                                     )
16                 Defendant.        )
    _____ )
17
18      The Court[1] now rules as follows with respect to the two disputed issues
19  listed in the Joint Stipulation ("JS").[2]
20

_____

22      [1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed
23  before the United States Magistrate Judge in the current action.  (See ECF
    Nos. 7, 9.)

24      [2]  As the Court advised the parties in its Case Management Order, the
25  decision in this case is being made on the basis of the pleadings, the
    Administrative Record ("AR") and the Joint Stipulation filed by the parties.
26  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the
27  Court has determined which party is entitled to judgment under the standards
28  set forth in 42 U.S.C. § 405(g).  (ECF No. 8 at 3.)

                                1

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1)     Whether the Administrative Law Judge ("ALJ") denied Plaintiff his due process rights to a full and fair hearing; and

(2)     Whether the ALJ properly considered the severity of Plaintiff's mental condition.

(JS at 5.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.**

**DISCUSSION**

**A.      Procedural History.**

On November 1, 2004, Plaintiff filed an application for Supplemental Security Income ("SSI") Benefits.  (AR at 66-70.)  He alleged an onset of disability as of July 1, 1991, due to stress, inability to focus, illiteracy, and short memory.  (Id. at 66-70, 71-75.)  His application was denied initially and upon reconsideration.  (Id. at 47-51, 54-59, 66-69.)

Plaintiff requested a hearing, and on August 22, 2006, a hearing was held.  (Id. at 60, 236-43.)  The ALJ granted a continuance so that Plaintiff could have additional time to obtain counsel.  (Id. at 241-43.)

On October 5, 2006, the ALJ held another hearing, noting that it was the third attempt to conduct a hearing in the matter to date.  (Id. at 244-69.) Plaintiff was represented by counsel, appeared, and testified.  (Id.)

On January 9, 2007, the ALJ issued a decision finding Plaintiff not disabled ("2007 Decision").[3]  (Id. at 8-16.)  Plaintiff's request for review to the Appeals Council was denied.  (Id. at 4-6.)  Plaintiff then filed an action in the Central District of California, Case No. EDCV 07-822-JTL.

On July 16, 2008, the Court issued a decision remanding the case to the

---

[3]  The ALJ in the 2007 Decision found that Plaintiff had the RFC to perform light work with the limitations to object-oriented work, work not requiring contact with the general public, work requiring only superficial, occasional contact with supervisors, and work limited to simple, repetitive tasks involving two to three step instructions.  (AR at 14.)  In the 2010 Decision at issue herein, the ALJ "firmly reject[ed] the prior physical limitation to light work."  (Id. at 414.)

3

1   Commissioner.[4]  (Case No. EDCV 07-822-JTL, ECF Nos. 19, 20.)

2       On August 19, 2008, the Appeals Council remanded the matter to the
3   Agency for further proceedings, also ordering a subsequent claim for benefits,
4   filed on July 17, 2007, associated with the initial claim.  (AR at 350.)

5       On December 16, 2008, another administrative hearing was held before
6   the same ALJ.  (Id. at 281-302.)  Plaintiff, who was incarcerated at the time due
7   to cocaine possession, testified by telephone and was represented by counsel.
8   (Id. at 283-90.)  A VE and a medical expert also testified.  (Id. at 283, 293-
9   302.)

10      On March 3, 2009, the ALJ issued another decision, again finding
11  Plaintiff not disabled ("2009 Decision").  (Id. at 270-80.)

12      Plaintiff filed another civil action in this Court, Case No. EDCV 09-
13  1058-OP.  (Id. at 431-34.)

14      On January 20, 2010, the parties stipulated to a remand for the purpose
15  of obtaining "additional vocational expert testimony to explain any divergence
16  between the Dictionary of Occupational Titles ("DOT") description of the other
17  jobs that the ALJ found that Plaintiff could perform and the RFC finding that
18  Plaintiff was 'functionally illiterate' and make findings as required by SSR 00-
19  4p."  (Case No. EDCV 09-1058-OP, ECF No. 18 at 1-2.)  On January 29, 2010,
20  based upon the parties' stipulation to voluntarily remand the matter, this Court
21  again remanded the case to the Commissioner, who ordered the case be

22

23

24
    _____

25      [4]  The Court found that the ALJ failed to fully explain the weight given
26  to the opinions of Plaintiff's treating physician, failed to provide clear and
    convincing reasons in support of his evaluation of Plaintiff's credibility, failed
27  to properly consider lay witness testimony, and failed to pose a complete
28  hypothetical to the Vocational Expert ("VE").  (AR at 312-28.)

                                    4

1    assigned to another ALJ.[5]  (AR at 433.)

2          On March 5, 2010, the newly assigned ALJ, F. Keith Varni, sent

3    Plaintiff's counsel a letter explaining the hearing process and stating that a

4    Notice of Hearing would be sent twenty days before the hearing date.  (Id. at

5    418.)

6          On April 14, 2010, the agency sent Plaintiff and his counsel a Notice of

7    Hearing, setting the hearing for June 14, 2010.  (Id. at 420-23.)

8          On May 14, 2010, Plaintiff's counsel sent a facsimile to the ALJ to

9    inform him that Plaintiff was incarcerated and expected to be released in

10   December 2010.  (Id. at 426.)

11         On Friday, June 11, 2010, the ALJ sent a letter to Plaintiff's prison

12   counselor,[6] requesting that Plaintiff appear at the Monday, June 14, 2010,

13   hearing by telephone.  (Id. at 427.)

14         On Monday, June 14, 2010, the hearing was held.  (Id. at 444-48.)

15   Plaintiff's counsel and a VE appeared at the hearing.  The ALJ telephoned the

16   prison but was unable to reach Plaintiff or his counselor.  (Id.)

17         The ALJ continued with the hearing, noting that the case had been

18   remanded due to a vocational issue, and that he had sent the VE an

19   interrogatory and received a response.  (Id. at 447.)  The ALJ provided

20   _____

21         [5]  In the 2009 Decision, the ALJ found Plaintiff was illiterate and had

22   the RFC to perform a full range of work at all exertional levels.  (AR at 277.)
     The Appeals Council noted that the ALJ failed to resolve an apparent conflict

23   between the jobs he found Plaintiff able to perform, and the fact that pursuant

24   to the DOT, those jobs would apparently require reading ability in excess of
     Plaintiff's capability.  (Id. at 433.)  The Appeals Council mistakenly noted

25   that the ALJ found Plaintiff to have the RFC to perform a full range of *light*

26   work.  (Id.)

27         [6]  There is no indication from either party as to how this letter was

28   transmitted.  There is no indication that it was faxed.

Plaintiff's counsel with an opportunity to cross-examine the VE, which counsel declined. (<u>Id.</u>)  Because he had been unable to contact Plaintiff telephonically, the ALJ also provided counsel with thirty days to submit "any type of written statement" from Plaintiff. (<u>Id.</u> at 448.)

On July 28, 2010, the ALJ sent another letter to Plaintiff and his counsel informing them that he intended to enter into evidence the Vocational Interrogatory received from the VE. (<u>Id.</u> at 436.)  Among other things, he informed Plaintiff that in light of the additional evidence, Plaintiff could submit written comments, a written statement as to the facts and law, and could request a supplemental hearing. (<u>Id.</u>)  No subsequent action was taken by Plaintiff or counsel.

On October 20, 2010, the ALJ issued his decision finding Plaintiff not disabled ("2010 Decision"). (<u>Id.</u> at 408-16.)  Plaintiff was informed that he had thirty days after receipt of the notice to file written exceptions to the decision if he disagreed with it. (<u>Id.</u> at 408-09.)  Plaintiff did not file any written exceptions.

**B.     <u>The ALJ's Findings.</u>**

In his 2010 Decision, the ALJ stated that "[t]he prior decision issued on March 3, 2009 is incorporated by reference and is the decision on remand as supplemented herein." (<u>Id.</u> at 414.)  He found that Plaintiff has the "severe impairments as described in the prior hearing decision." (<u>Id.</u> at 413.)  In the prior 2009 Decision, Plaintiff was found to have the severe impairments of antisocial personality disorder, affect disorder not otherwise specified, and substance abuse. (<u>Id.</u> at 275.)

With respect to Plaintiff's RFC, in the 2009 Decision, the prior ALJ found as follows:

> After  careful  consideration  of  the  entire  record,  the undersigned  finds  that  the  claimant  has  the  residual  functional

capacity to perform a full range of work at all exertional levels but
with the following non-exertional limitations:  the claimant is
illiterate, limited to moderately complex tasks performed in a
repetitive setting not requiring work around dangerous unguarded
moving machinery or the responsibility for the safety of others, no
work requiring reading, work which is object oriented and does not
require social finesse and requires only minimal contact with the
general public.  The claimant is precluded from work requiring
precise math calculations and is limited to superficial and occasional
contact with supervisors.

(Id. at 277.)  The ALJ found Plaintiff capable of performing such job as cleaner
(DOT No. 381.687-018), hand packer (DOT No. 920.587-0189), and bench
assembler/table worker (706.684-042).  (AR at 277.)

In the 2010 Decision, the ALJ simply stated:  "After careful
consideration of the entire record, I find that the claimant is completely without
*physical* limitations and is capable of work at any exertional level."  (Id. at 413
(emphasis added).)  At Step Five of the decision-making process, the ALJ also
specifically noted:

[Plaintiff's] ability to perform work at all exertional levels has
been compromised by *nonexertional limitations*.  To determine the
extent to which these limitations erode the occupational base of
unskilled work at all exertional levels, I asked the vocational expert
whether jobs exist in the national economy for an individual with the
claimant's age, education, work experience, and residual functional
capacity.  The vocational expert testified that given all of these
factors the individual would be able to perform the requirements of
representative occupations such as cleaner, packager and table
worker.

7

1   (Id. at 415 (emphasis added).)

2   **C.    Due Process Right to a Fair Hearing.**

3        Plaintiff claims that the ALJ denied him his due process right to a full

4   and fair hearing.  (JS at 5-10.)  Specifically, he claims that the ALJ never

5   indicated during the hearing whether Plaintiff was an unessential or

6   unnecessary witness, failed to take any testimony regarding Plaintiff's

7   limitations and/or impairments, could have rescheduled a consultative

8   examination Plaintiff was unable to attend due to his incarceration, and could

9   have rescheduled the hearing in light of Plaintiff's incarceration and the late

10  notice sent to the prison.  (Id.)

11       Due process requires that a claimant receive meaningful notice and an

12  opportunity to be heard.  Udd v. Massanari, 245 F.3d 1096, 1099 (9th Cir.

13  2001); Hernandez-Devereaux v. Astrue, 614 F. Supp. 2d 1125, 1135 (D. Or.

14  2009).  In this case, Plaintiff has failed to demonstrate his due process rights

15  were violated.

16       **1.    Meaningful Notice.**

17       On March 5, 2010, Plaintiff's counsel was informed that a hearing was

18  going to be held, and that a Notice of Hearing would be sent twenty days

19  before the hearing date.  (AR at 418.)  On April 14, 2010, both Plaintiff and his

20  counsel were sent the Notice of Hearing, setting the hearing date for June 14,

21  2010.  (Id. at 420-23.)  Thus, Plaintiff received notice two months in advance

22  of the hearing date.

23       The Notice of Hearing informed Plaintiff that he could present evidence,

24  either by mailing it or bringing it to the ALJ prior to the hearing, or by bringing

25  it to the hearing; that a vocational expert would testify at the hearing; that

26  Plaintiff had the right to submit documents and call and cross-examine

27  witnesses; and that Plaintiff could "give written statements about the facts and

28  law."  (Id. at 422.)  Although notice to the prison counselor asking that Plaintiff

be permitted to appear telephonically at the hearing arguably was not sent in a manner timely enough to ensure Plaintiff would be able to so appear,[7] Plaintiff's counsel did appear at the hearing, and did not request that the hearing be rescheduled due to Plaintiff's inability to attend.

Accordingly, the Court finds that Plaintiff received meaningful notice of the hearing.

**2.** **Opportunity to Be Heard.**

Nor has Plaintiff demonstrated that he was denied an opportunity to meaningfully participate in the proceedings.  The VE was present at the hearing and the ALJ gave counsel the opportunity to question the VE, which counsel declined.  (Id. at 447.)  Although Plaintiff could not appear at the hearing due to his incarceration, he was given an additional thirty days to provide the ALJ with a written statement.  (Id. at 447-48.)  There is no evidence that Plaintiff or his counsel ever attempted to submit such a statement.  That nothing was ever submitted does not mean that Plaintiff was denied an opportunity to meaningfully participate in the hearing.  In fact, Plaintiff was present at his prior hearings and provided testimony for both of those hearings; in his 2010 Decision, the ALJ considered all the evidence of record.  (See, e.g., id. at 71-79, 80-82, 83-90, 100-07, 109-114, 244-69, 281-302, 411, 413.)

Also, on July 28, 2010, after the hearing, the ALJ sent another letter to both Plaintiff and his counsel informing them that he had added the VE's interrogatory response to the record, and that as a result, Plaintiff had the right to submit written comments concerning the evidence, a written statement as to

---

[7]  Any error in the short notice to the prison was harmless because, when he was unable to reach Plaintiff telephonically, the ALJ informed counsel that he would give Plaintiff an additional thirty days to obtain any type of written statement that the ALJ would then receive into evidence and consider in making his decision.  (AR at 447-48.)

1    the facts and law believed to apply in light of that evidence, and any additional

2    records he would like the ALJ to consider, including, if he wanted, a report

3    from a treating physician.  (Id. at 436.)  He also informed Plaintiff he could

4    submit written questions to the VE, or request a supplemental hearing.  (Id.)

5    Neither Plaintiff or his counsel requested a hearing, or submitted any additional

6    comments, questions, or information.

7         In short, Plaintiff was afforded all process due, both with regard to notice

8    and a meaningful opportunity to be heard.  Thus, the Court finds that there was

9    no due process violation.

10   **D.     The ALJ's Assessment of Plaintiff's Mental Condition.**

11        Plaintiff contends that in the 2010 Decision the ALJ failed to "properly

12   rate the severity of plaintiff's mental impairment," and ignored the evidence

13   regarding Plaintiff's mental impairments, failing to consider "the four broad

14   functional areas set out in the disability regulations for evaluation [of] mental

15   disorders such as . . . limitations in activities of daily living, social functioning,

16   concentration, persistence or pace, and episodes of decompensation.  (JS at 14.)

17   He contends that proper consideration of these areas would likely have resulted

18   in the ALJ finding Plaintiff "more impaired in his assessment and his

19   determination of plaintiff's RFC."  (Id. at 15.)  He also contends that the ALJ

20   "completely omitted all the mental and physical limitations as set forth in the

21   previous two decisions" (id. at 9), and "chose to ignore the probative evidence

22   and completely dismissed any allegation of mental impairments in his decision"

23   (id. at 18).  The Court does not agree.

24        As previously noted, the ALJ fully incorporated the 2009 Decision "and

25   is the decision on remand as supplemented" by the current decision.  (AR at

26   414.)  In the 2009 Decision, the ALJ fully discussed the requisite functional

27   areas at Step Two of his analysis.  (Id. at 275-77.)  Thus, to the extent that

28   Plaintiff contends that in the 2010 Decision the ALJ failed to complete the

1  functional analysis at Step Two, his claim fails.

2        Moreover, to the extent Plaintiff is contending that the RFC in the 2010

3  Decision failed to include *any* of the nonexertional limitations from the 2009

4  Decision, the Court disagrees.  The 2009 Decision, including Plaintiff's

5  nonexertional limitations, was fully incorporated in the 2010 Decision.[8]  That

6  case was remanded solely for the purpose of determining the impact of

7  Plaintiff's illiteracy on the ALJ's finding that Plaintiff could perform the jobs

8  of cleaner, hand packer, or bench assembler/table worker.[9]  (Id. at 433.)  The

9  ALJ was ordered to obtain supplemental evidence from the VE to clarify the

10  effect of the assessed limitations on Plaintiff's occupational base; he was also

11  told that the hypothetical questions to the VE should reflect the limitations

12  established by the record as a whole.  (Id.)  As a result, in his interrogatory to

13  the VE, the ALJ specifically incorporated the nonexertional limitations found

14  by the prior ALJ:  "Consider mental limits of routine and repetitive, entry

15  level, minimally stressful work, requiring no contact with the general public

16  and only superficial interpersonal contact with co-workers and supervisors,"

17  and then sought the VE's opinion on the impact of Plaintiff's illiteracy on the

18  job base for the jobs of cleaner, hand packer, and bench assembler/table

19  worker.  (Id. at 442.)  Additionally, at Step Five of his analysis, the ALJ

20  specifically stated that Plaintiff's "ability to perform work at all exertional

21  levels has been compromised by nonexertional limitations," and that he had

22  incorporated those nonexertional limitation into his interrogatory to the VE.

23

24
25        [8]  As previously discussed, the ALJ specifically rejected the finding by
26  the ALJ in the 2007 Decision that Plaintiff was capable of performing a full
   range of light work with limitations. (AR at 414.)

27        [9]  There was apparently no dispute regarding the other nonexertional
28  limitations found by the ALJ in the 2009 Decision.

1   (Id. at 415.)

2       Based on the foregoing, the Court concludes that Plaintiff's

3   nonexertional limitations as set forth in the 2009 Decision were incorporated

4   by reference into the RFC in the 2010 Decision.  They were also taken into

5   account by the ALJ and the VE in determining whether Plaintiff could still

6   perform the jobs of cleaner, hand packer, and bench assembler/table worker,

7   given the additional impact of Plaintiff's illiteracy.  Thus, the Court finds there

8   was no error.

9                              **IV.**

10                            **ORDER**

11      Based on the foregoing, IT THEREFORE IS ORDERED that Judgment

12  be entered affirming the decision of the Commissioner, and dismissing this

13  action with prejudice.

14

15

16  DATED: November 10, 2011

    _____
    HONORABLE OSWALD PARADA
    United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28